**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| AARON LLOYD BISE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-CV-631 |
| | § | |
| ROEHRIG MARITIME, L.L.C. and HORNBECK OFFSHORE SERVICES, INC., | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | RULE 9(h) ADMIRALTY |

**ORDER DENYING DEFENDANT ROEHRIG MARITIME, L.L.C.'S MOTION TO DISMISS FOR LACKOF PERSONAL JURISDICTION**

This case arises out of personal injuries allegedly sustained by Plaintiff Aaron Lloyd Bise ("Plaintiff") while he was working as a crewmember on the JOHN H. MALIK, a tug owned by Defendant Roehrig Maritime, L.L.C. ("Defendant"). Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction. Plaintiff filed a Response to said Motion, and Defendant filed a Reply. For the reasons outlined below, Defendant's Motion is **DENIED**.[1]

**I. Background**

Defendant, a New York corporation, purchased the JOHN H. MALIK from TT Boat Corporation, a Louisiana corporation. At the time of the purchase, the JOHN H. MALIK was dry-docked at the Bollinger Shipyard in Texas City, Texas. Mr. Boyajian, Defendant's vice president of engineering, traveled from New York to Texas City while the JOHN H. MALIK was in dry dock to

---

[1]The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

"meet" the vessel. (Pelkowski Dep. 12:3–11.) The JOHN H. MALIK was in need of repair, and Defendant entered into a contract with Bollinger Shipyard to perform the repairs.

Plaintiff claims he sustained severe injuries to his neck, back, and other parts of his body, on June 20, 2006 and June 24, 2006 while he was retrieving cable for the barge, ENERGY 11104, which was, according to Plaintiff, owned, operated, and/or managed by Defendant Hornbeck Offshore Services, Inc. At the time of the alleged injury, the JOHN H. MALIK was offshore.[2]

Defendant claims that this Court may not exercise personal jurisdiction over it because it is a New York corporation with no significant ties to Texas. Plaintiff claims that the Court may exercise personal jurisdiction over Defendant because Defendant (1) regularly uses Texas ports; (2) took delivery of the JOHN H. MALIK in Texas; (3) sent personnel to Texas to facilitate that transaction; and (4) chose to contract with Bollinger Shipyards, a Texas company, for the dry-docking and refitting of the JOHN H. MALIK.

**II. Legal Standard**

Generally, the plaintiff bears the burden of establishing the Court's jurisdiction over a nonresident defendant. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). However, it is sufficient for the plaintiff to make a *prima facie* showing of jurisdiction, and any conflicts between affidavits are resolved in favor of the plaintiff. *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 785 (5th Cir. 1990); *Guyton v. Pronav Ship Mgmt., Inc.*, 139 F. Supp. 2d 815, 818 (S.D. Tex. 2001).

A nonresident defendant, is subject to personal jurisdiction in this District if: (1) it is amenable to service of process under Texas's long-arm statute, and (2) the exercise of personal jurisdiction over

[2]The Court has not been informed of the vessel's exact location at the time of the alleged accident, but it infers that the vessel was somewhere in the Gulf of Mexico.

the defendant is consistent with due process. *See Stripling v. Jordan Prod. Co., L.L.C.*, 234 F.3d 863, 869 (5th Cir. 2000); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). The Texas long-arm statute grants jurisdiction over a nonresident defendant "doing business"in Texas. *See* TEX. CIV. PRAC. & REM. CODE § 17.042 (Vernon 1997). The phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, and therefore the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson* Co., 9 F.3d 415, 418 (5th Cir. 1993); *Williams v. Castro*, 21 F. Supp. 2d 691, 692 (S.D. Tex. 1998); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356–57 (Tex. 1990).

Whether the exercise of personal jurisdiction over a defendant is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that the defendant has "minimum contacts" with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945). Second, the Court must determine that requiring the defendant to litigate in this forum does not offend "traditional notions of fair play and substantial justice." *Id.*; *see also Wilson*, 20 F.3d at 647; *Ruston Gas Turbines*, 9 F.3d at 418.

**III. Minimum Contacts**

The "minimum contacts" prong can be satisfied by finding either specific or general jurisdiction over a defendant. *See Wilson*, 20 F.3d at 647. A defendant's limited contact with the forum state may support specific jurisdiction if such contacts give rise to the cause of action. *See Ruston Gas Turbines*, 9 F.3d at 419 ("A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being

asserted."). In the instant case, neither Party has suggested that specific jurisdiction exists.

A defendant's contacts unrelated to the cause of action may confer general jurisdiction, but these contacts must be both "continuous and systematic" and "substantial." *Wilson*, 20 F.3d at 647, 650–51. A defendant's contacts with the forum state may be deemed continuous, systematic, and substantial if the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239–40, 2 L. Ed. 2d 1283 (1958)). Such contacts need not exhibit a physical presence within the state, but they should be "such that [the defendant] should reasonably anticipate being haled into court there." *Id.* at 474–76 105 S. Ct. at 2183–84 (citing *World-Wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 490 (1980)).

Defendant claims that it does not regularly do business in Texas, does not regularly travel to Texas, does not maintain an office in Texas, does not solicit business in Texas, and has not otherwise taken any action that would put Defendant on notice that it is subject to the call of a Texas court. Conversely, Plaintiff claims that Defendant's contacts with Texas are continuous and systematic and that Defendant has purposely availed itself of the benefits and protection of Texas laws and should, thus, have anticipated being called into a Texas court.

Defendant's vessels made port calls to Texas ports nineteen times from December 2001 to December 2006. Plaintiff claims this constitutes continuous and systematic contacts, and Defendant claims that such calls, made at the discretion of charterers, are not sufficient to establish general jurisdiction. In *Asarco Inc. v. Glenara, Ltd.*, the Fifth Circuit addressed whether the number of port

calls, taken in and of itself, is enough to support general jurisdiction. *See Asarco, Inc.*, 912 F.2d at 784. The *Asarco* forum was Louisiana, and the defendant was a ship management company. The only evidence of contacts with Louisiana that the plaintiff presented was that ships managed by the defendant made port calls to Louisiana. *See id.* The Fifth Circuit found that the visits to Louisiana ports were "better characterized as sporadic than continuous and systematic." *Id.* The Fifth Circuit also noted that the ship management company "lacked control over where the vessels would make port," which was considered evidence that the ship management company could not reasonably "anticipate the possibility of being haled into court in Louisiana." *Id.*

Defendant argues that the instant case is analogous to *Asarco*. In *Asarco*, the Defendant's ships made twenty calls to the forum's port; here, Defendant's ships made nineteen calls to Texas ports. Also, like the *Asarco* defendant, Defendant was not in control of where the vessels called.[3] The Court agrees that the instant case has many similarities to *Asarco*. However, it is distinguishable. The contacts in *Asarco* were "insufficient to cause [the defendant] reasonably to anticipate . . . being haled into court in Louisiana," but the port calls were the only contacts the defendant had with the forum state. In the instant case, the Texas port calls are not the only evidence that Plaintiff presents. *Id.*

Plaintiff argues that the contract Defendant entered into with Bollinger shipyards supplements the nineteen port calls and establishes that Defendant had continuous and systematic contacts with Texas. Defendant claims that it did not choose to have its ship repaired at Bollinger Shipyard and only consented to the repairs because the JOHN H. MALIK was already dry-docked at Bollinger

[3]The Time Charter Agreements used by Defendant allowed for travel in the Gulf of Mexico, but Defendant did not choose the ports.

Shipyard when Defendant purchased the vessel. Thus, according to Defendant, it did not "purposely avail" itself of the privilege of conducting business in this state. This argument is not convincing. Defendant was aware that the tug was dry-docked in Texas when it purchased the tug, and deposition testimony indicates that the tug was capable of navigation at the time it was purchased. (Pelkowski Dep. 13:22–23.) If Defendant did not desire to enter into a contract with a Texas corporation, then it could easily have moved the tug to another location to be repaired. Furthermore, Defendant could have bought a tug that was not in Texas.

Defendant also argues that this single contract does not constitute continuous and systematic contacts with Texas. Usually, a single contract in the forum state is not sufficient to support the exercise of general jurisdiction. *See Sys. Pipe & Supply, Inc. v. M/V VIKTOR*, 242 F.3d 322, 324 (5th Cir. 2001) ("As a practical matter . . . a single act will *rarely* suffice to meet the minimum contacts standard." (emphasis added)). However, in the instant case, the contract with Bollinger Shipyard is not the only contact Defendant had with Texas. Defendant bought the vessel while it was located in Texas, and its ships also regularly called on Texas ports. While neither the calls nor the contract would be sufficient standing alone, when one considers the calls and contract *together*, the argument that the contacts are continuous and systematic is strengthened. The Court finds that these contacts support its exercise of personal jurisdiction over Defendant.

**IV. Fair Play and Substantial Justice**

The second prong of the due process inquiry requires the Court to determine whether the exercise of jurisdiction would violate "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 325 U.S. at 316, 66 S. Ct. at 158. However, "where a defendant who purposely has directed his activities ast forum residents seeks to defeat jurisdiction, he must present a compelling case that

the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477, 105 S. Ct. at 2184. The Court may consider factors such as "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S. Ct. at 564). Occasionally, "these factors . . . serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.*

Defendant argues that it would be unfair to hale it into court in Texas because (1) its principal offices are located in New York; (2) the witnesses reside in New York; and (3) Texas has no interest in this dispute. First, the Court acknowledges that traveling from New York to Texas will be inconvenient for Defendant, and this inconvenience weighs somewhat in its analysis. However, Defendant's employees have traveled either by airplane or ship to Texas before, and the Court does not consider their making such a journey again as being a strong enough burden, particularly in light of Defendant's industry, to defeat Plaintiff's *prima facie* showing of personal jurisdiction. Furthermore, the Federal Rules of Civil Procedure provide other remedies for an inconvenient forum. The same reasoning stands for the locale of the witnesses.

Regarding Defendant's third argument, the Court strongly disagrees with Defendant's assertion that Texas has no interest in this matter. Texas has a direct and compelling interest in the outcome of this case. Defendant's ships regularly call on Texas ports, Defendant bought the JOHN

H. MALIK in Texas,[4] and Defendant contracted to have the JOHN H. MALIK repaired in Texas. Furthermore, the repairs that occurred in Texas may, according to Plaintiff, be an issue in the case. Thus, the factors outlined by the Supreme Court in *Burger King* as indicative of traditional notions of fair play and substantial justice weigh in favor of this Court's exercise of personal jurisdiction over Defendant.

**V. Conclusions**

In sum, Plaintiff has successfully made a *prima facie* showing that this Court's exercise of personal jurisdiction over Defendant does not violate the Due Process Clause of the United States Constitution. Therefore, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**. Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 21st day of March, 2007, at Galveston, Texas.

Samuel B. Kent
United States District Judge

[4]The Court notes that, as discussed in the Statement of Facts, Defendant's vice president of engineering traveled to Texas to meet the JOHN H. MALIK. The purchase of a vessel is a significant investment and thus suggests a stronger connection to the state in which it was purchased than, for instance, buying an item that is located in Texas on eBay.